Scott Maurer, C.S.B. #180830
Cheryl Scheer, C.L.S. #20998
KATHARINE & GEORGE ALEXANDER
COMMUNITY LAW CENTER
1030 The Alameda
San Jose, California 95126
Phone: (408) 288-7030
Fax:    (408) 288-3581

William E. Kennedy, C.S.B. #158214
LAW OFFICES OF WILLIAM E. KENNEDY
2797 Park Ave #201
Santa Clara, CA 95050
Phone: (408) 241-1000
Fax:    (408) 241-1500

Eric W. Wright, C.S.B. #41197
19910 Wright Drive
Los Gatos, CA 95033
Phone: (408) 554-4353
Fax:    (408) 554-4426

Attorneys for Plaintiff Eliseo Navarrette
and others similarly situated

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San Jose Division)

| | |
|---|---|
| ELISEO NAVARRETTE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TD BANKNORTH, N.A,<br><br>Defendant | Case No.: C-07-02767 JW<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AN ORDER CERTIFYING A CLASS, GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, AWARDING ATTORNEY'S FEES AND COSTS TO PLAINTIFF; AND ENTERING JUDGMENT<br><br>Date:  Sept. 15, 2008<br>Time:  9:00 a.m.<br>Judge.: The Hon. James Ware |

**TABLE OF CONTENTS**

I. NATURE OF THE ACTION ................................................... 1

II. CLASS DEFINITION, CLASS NOTICE AND CLASS RESPONSE ............... 2

III. ARGUMENT ................................................................. 2

   A. The Standards For Judicial Approval of Class Action Settlements ............... 2

   B. The Settlement Meets The Ninth Circuit Standard For Approval ................ 3

      1. Sufficient Discovery Was Conducted To Enable The Parties to Identify The Strengths And Weaknesses Of Their Case ........................... 3

      2. The Settlement Appropriately Balances The Risks Of Litigation And The Benefit To The Class Of A Certain Recovery ........................... 4

      3. The Recommendations Of Experienced Counsel Heavily Favor Approval Of The Settlement ........................................................ 5

      4. Reaction Of The Class Supports Approval Of The Settlement ............ 5

   C. The Plaintiff Should Be Awarded $44,561.50 in Attorneys Fees and Costs ....... 6

IV. CONCLUSION ............................................................... 7

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Officers for Justice v. Civil Service Com* (9th Cir. 1982) 688F.2d 615, 625 ............... 2, 3

*Van Bronkhorst v. Safeco Corp.* (9th Cir. 1976) 529 F.2d 943, 950, ....................... 3

*Utility Reform Project v. Bonneville Power Admin.* (9th Cir. 1989) 869 F.2d 437, 443 ........ 3

*Ellis v. Naval Air Rework Facility* (N.D. Cal. 1980) 87 F.R.D. 15, 18, affd, 661 F.2d 939 (9th Cir. 1981) .......................................................... 3, 5

*Williams v. First National Bank* (1910) 216 U.S. 582, 595 ............................. 3

*In re Pacific Enterprises Sec. Litig.* (9th Cir. 1995) 47 F.3d 373, 377, 378 ................. 3

*MWS Wire Industries, Inc. v. California Fine Wine Co.* (9th Cir. 1986) 797 F.2d 799, 802 .... 3

*Marshall v. Holiday Magic, Inc.* (9th Cir. 1977) 550 F.2d 1173, 1178 .................... 3

*Boyd v. Bechtel Corp.* (N.D. Cal. 1979) 485 F. Supp. 616-617 ........................ 3, 4

*In re Warner Communications Sec. Litig.* (S.D.N.Y. 1985) 618 F. Supp. 735, 741, 746 .... 3, 4, 6

*Girsh v. Jepson* (3rd Cir. 1975) 521 F.2d 153, 157 ................................. 3, 4

*Weinberger v. Kendrick* 698 F.2d at 74 (2nd Cir. 1982) .............................. 3

*Marshall,* 970 F.2d 383 (7th Cir, Ill. 1992) ........................................ 4

*Perrone v. GMAC,* 232 F.3d 433, 440 (5th Cir. La. 2000) ............................ 5

*Fisher Bros. v. Cambridge-Lee Industries, Inc.* (E.D. Pa. 1985) 630 F. Supp. 482, 488 ....... 5

*Detroit v. Grinnell Corp.* (2nd Cir. 1974) 495 F.2d 448, 463 ........................... 6

*Milstein, supra,* at 267 ...................................................... 6

*Hensley v. Eckerhart* (1983) 461 U.S. 424, 533 .................................. 6, 7

*Davis v. City & County of San Francisco* (9th Cir. 1992) 976 F.2d 1536, 1544 .......... 6, 7

**FEDERAL STATUTES**

*Truth in Lending Act, 15 U.S.C. §1601 et seq* .................................................. 1, 4

*Federal Rule of Civil Procedure 23(e)* ............................................................ 1, 3

*Truth in Lending Act, 15 U.S.C. §1640(a)(2)(B)* ................................................. 4

*Truth in Lending Act, 15 U.S.C. §1640(a)(3)* .................................................... 6

Plaintiff submits this memorandum in support of Eliseo Navarrette's petition for final approval of the parties' settlement agreement. This petition is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure and also pursuant to the settlement agreement entered into by the parties. The court has given preliminary approval to a national class-wide settlement. Issues as to class certification, including adequacy of class counsel, were fully set forth in papers filed in support thereof, and are incorporated herein. Notice has been duly given. No objections were filed. Out of a class of nearly 2,500 members, only four requests for exclusion were submitted to the class administrator. The parties' agreement should now be given final approval.

## I.  NATURE OF THE ACTION

This action arose from Eliseo Navarrette's purchase of a Craftmatic of California bed that was financed by the defendant, TD Banknorth[1]. On May 25, 2007, Eliseo Navarrette initiated the action against TD Banknorth. The action asserted class-wide violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; as well as an individual claim for a violation of the California Consumers Legal Remedies Act, Civil Code §1750 *et seq.* The essence of Mr. Navarette's class claim was that the defendant provide the wrong kind of disclosures: open- rather than closed-end.

TD Banknorth denied the material allegations made in the action and denied any and all liability with respect to any and all facts and claims alleged in the action and further denied that the Representative Plaintiff and/or the Settlement Class suffered any damage, or were entitled to any recovery.

The parties reached an agreement in principal during a judicially supervised Early Settlement Conference. Subsequently the parties entered into a written settlement agreement, which was submitted to this court for approval. On April 28, 2008, this court issued an order of Preliminary Approval of the parties' settlement agreement. That order set September 15, 2008 as the date for a Final Fairness Hearing.

---

[1] Defendant TD Banknorth, N.A. has recently changed its name to TD Bank, N.A. For the sake of consistency, this brief will refer to TD Bank as TD Banknorth.

## II. CLASS DEFINITION, CLASS NOTICE AND CLASS RESPONSE

Defined in ¶ 1.17 of the Settlement Agreement, and described clearly in the class notice, the "Settlement Class" consists of "all residents of the United States who opened a Comfort Mobility Credit Line account with TD Banknorth and/or Shoppers Charge Accounts Co. in connection with a purchase from any Craftmatic Entity between May 25, 2006 and February 13, 2008, including without limitations, all co-borrowers."

After receiving information from the Defendant, Rosenthal & Company, LLC, the class administrator (hereafter 'the Administrator'), determined that 2,456 accounts fall within the class definition. Declaration of John Keane re: Notice Procedures (hereafter 'Keane Decl'), ¶5. Before attempting to contact the class members, the Administrator updated the class member addresses using the National Change of Address system. Keane Decl, ¶4.

On July 2, 2008, the Administrator mailed a copy of the class notice - approved by this court - to each class member; the notice was provided in both English and Spanish. Keane Decl, ¶¶2 & 8 and Exhibits A & B thereto. After the mailing, a total of sixty-five notice packets were returned to the Administrator by the U.S. Postal Service; most were returned without a forwarding address. Keane Decl, ¶¶ 9-10. The Administrator was provided with, or located, new addresses for twenty-two of these class members, and remailed the notice packet to that group. Keane Decl, ¶10. In short, the notice provided to the class members represented the best notice practicable under the circumstances.

Only four of 2,456 class members requested exclusion. Keane Decl, ¶13 and Exhibit C thereto. None of the 2,456 class members objected to the settlement. Keane Decl, ¶14.

## III. ARGUMENT

### A. The Standards For Judicial Approval of Class Action Settlements

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." (Officers for Justice v. Civil Service Com. (9th Cir. 1982) 688 F.2d 615, 625.) Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length and costs of the litigation. "There is an overriding public interest in settling and quieting litigation," and this is

1  "particularly true in class action suits." (Van Bronkhorst v. Safeco Corp. (9th Cir. 1976) 529 F.2d
2  943, 950; Utility Reform Project v. Bonneville Power Admin. (9th Cir. 1989) 869 F.2d 437, 443.)[2]
3     In approving a proposed settlement of a class action under Federal Rule of Civil Procedure
4  23(e), the Court must find that the proposed settlement is "fair, adequate and reasonable."[3] The Ninth
5  Circuit has provided a list of factors which may be considered in evaluating the fairness of a class
6  action settlement:

> [a]lthough Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. (Officers for Justice, supra, at 625; citations omitted;).

**B.  The Settlement Meets The Ninth Circuit Standard For Approval**
   **1.  Sufficient Discovery Was Conducted To Enable The Parties To Identify The Strengths And Weaknesses Of Their Case**

"'[T]he stage of the proceedings and the amount of discovery completed'" is one of the factors which courts consider in determining the fairness, reasonableness and adequacy of a settlement. (In re Warner Communications Sec. Litig. (S.D.N.Y. 1985) 618 F. Supp. 735, 741 (citation omitted), aff'd, 798 F.2d 35 (2d Cir. 1986); Girsh v. Jepson (3rd Cir. 1975) 521 F.2d 153, 157; See also Weinberger, 698 F.2d at 74; Ellis, supra, at 18; Boyd, supra, at 616-17.)

In the present action, all parties participated in initial disclosures. Maurer Decl, ¶4. Following initial disclosures, Class Counsel propounded written discovery on the defendant and received sworn responses. Maurer Decl, ¶4. The discovery included detailed information (including statistical

---

[2]  The law always favors the compromise of disputed claims. (See Williams v. First Nat'l Bank (1910) 216 U.S. 582, 595; In re Pacific Enterprises Sec. Litig. (9th Cir. 1995) 47 F.3d 373, 378; MWS Wire Industries, Inc. v. California Fine Wine Co. (9th Cir. 1986) 797 F.2d 799, 802.)

[3]  Pacific Enterprises, supra, at 377; Officers for Justice, supra, at 625; Marshall v. Holiday Magic, Inc. (9th Cir. 1977) 550 F.2d 1173, 1178.)

information) regarding defendant's expectation of repeated transactions: the central issue in this case. Maurer Decl, ¶4. In summary, sufficient information (on issues of both liability and damages) was before the parties and their counsel to permit them to consider the strengths and weaknesses of the case.

### 2. The Settlement Appropriately Balances The Risks Of Litigation And The Benefit To The Class Of A Certain Recovery

The settlement herein provides that the class members will equally share a pool of $591,571.66. That is, each of the 2,452 remaining class members will receive a check for $241.26 without having to submit a claim. Uncashed checks will be distributed to non-profit organizations that provide free legal services to low income consumers. Maurer Decl, ¶12.

To determine whether the proposed settlement is fair, reasonable and adequate, the Court must balance against the continuing risks of litigation the benefits afforded to members of the class and the immediacy and certainty of a substantial recovery. (Girsh, *supra*, at 157; Boyd, *supra*, at 616-17; Warner Communications, *supra*, at 741.) A balance of these factors in this case supports approval of the settlement.

The sole class cause of action asserted in this case is under the Federal Truth in Lending Act (TILA), 15 U.S.C. §1601 *et seq*. Mr. Navarrette sought both actual and statutory damages on behalf of the class.

The parties agree that the continued prosecution of this litigation presents risks to the class with respect to the ultimate recovery of damages. The parties agree that, if the plaintiff's action was successful, class statutory damages would be limited to $500,000. 15 U.S.C. §1640(a)(2)(B)). Prevailing case law suggests that no prejudgment interest could be awarded on this recovery. In re Marshall, 970 F.2d 383 (7th Cir. Ill. 1992).

As to actual damages, the prevailing case law is that actual damages cannot be recovered in this type of TILA case. "Since individual reliance is necessary to prove actual damages, a class action may not be certified on this issue." Perrone v. GMAC, 232 F.3d 433, 440 (5th Cir. La. 2000). Plaintiff does not agree with the holding of Perrone, but there are no circuit cases to the contrary. While there are cases where individual reliance ought to be presumed on a classwide basis, plaintiff

does not contend this is such a case. (This is a case where plaintiff claims that certain disclosures were *omitted*, not one where plaintiff claims that certain disclosures were *inaccurate*). Furthermore, settlement class counsel is unaware of any case such as this where TILA was the sole class cause of action and the class recovered more than the $500,000 amount specified above[4]. Maurer Decl, ¶5; Kennedy Decl, ¶7.

Furthermore, assuming Class Counsel successfully prosecuted this action through trial and received a more favorable result, such an outcome could result in post-trial motions and even appeal, which would prolong any potential class recovery even further. Given the apparent unavailability of prejudgment interest on statutory damages, such a delay would erode the eventual class recovery.

In summary, under prevailing case law, the maximum recovery at trial for the class would be $500,000. The settlement agreement provides the class with nearly $100,000 *more* than that. This strongly favors approval.

### 3. The Recommendations Of Experienced Counsel Heavily Favor Approval Of The Settlement

Experienced counsel, negotiating at arm's length, have weighed these factors and endorse the settlement. Declaration of Scott C. Maurer, ¶2; Declaration of William E. Kennedy, ¶3. As courts have stated, the view of the attorneys actively conducting the litigation, while not conclusive, "is entitled to significant weight." (Fisher Bros. v. Cambridge-Lee Industries, Inc. (E.D. Pa. 1985) 630 F. Supp. 482, 488; Ellis, *supra*, at 18 ["the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"].).

### 4. Reaction Of The Class Supports Approval Of The Settlement

Notices of the class settlement were sent to 2,456 class members. As noted above, only four

---

[4] At defendant's request, plaintiff notes that the release encompasses more than just the TILA claim, extending to all claims arising under state or federal law related to the credit disclosures, or lack of credit disclosures made in association with the financing of purchases from any Craftmatic entity. Also the Representative Plaintiff has released all claims which relate to or arise out of the alleged sales practices of any Craftmatic entity.

requests to opt-out were served and there have no been no written objections to the class settlement. This overwhelming demonstration of support by the class members is an important factor in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement. (Detroit v. Grinnell Corp. (2nd Cir. 1974) 495 F.2d 448, 463; Warner Communications, supra, at 746; Milstein, supra, at 267.)

### C.     The Plaintiff Should Be Awarded $44,561.50 in Attorneys Fees and Costs

Plaintiff Navarrette is entitled to an award of "reasonable" attorney's fees and costs in this action. Such an award is provided for by statute and the parties' agreement. 15 U.S.C. § 1640(a)(3) provides, in relevant part, that "in the case of any successful action to enforce the foregoing liability .... the costs of the action, together with a reasonable attorney's fee as determined by the court" are to awarded to the prevailing plaintiff. Furthermore, the parties' Agreement provides in part that:

> 3.07.  Plaintiff's Counsel and Settlement Class Counsel shall together make an application to the Court for an award of attorneys' fees, costs and expenses not to exceed $50,000. TD Banknorth shall not oppose any application by Plaintiff's Counsel for reasonable attorney's fees and costs, up to $50,000. Plaintiff shall not apply for any amount in excess of $50,000. ....The award for attorneys' fees, costs and expenses shall be paid separate from and in addition to the payments to the Settlement Class Members and Representative Plaintiff and shall not reduce the amounts of those payments.
> (See copy of Class Action Settlement Agreement, ¶ 3.07, attached as Exhibit "A" to Maurer Decl.)

In calculating the award of attorney's fees and costs, courts typically begin with a "lodestar." The lodestar is the number of allowable hours times an hourly rate. There is a strong presumption that the lodestar amount represents an adequate and appropriate fee award. (See Hensley v. Eckerhart (1983) 461 U.S. 424, 533; Davis v. City & County of San Francisco (9th Cir. 1992) 976 F.2d 1536, 1544.)

Plaintiff Navarrette's total lodestar in this case is $44,211.50. This figure represents the sum of lodestars for Class Counsel Law Offices of William E. Kennedy and the Katharine & George Alexander Community Law Center ('Community Law Center'). The lodestar for the Law Offices of William E. Kennedy is $14,040.00, which is based on an hourly rate of $450 and includes 31.2 documented hours of work on the action. (See Declaration of William E. Kennedy, ¶ 10 & Exh. A

thereto.) The lodestar for Community Law Center is $30,171.50, which is based on hourly rates ranging from $125 per hour to $360 per hour and includes 125.5 documented hours of work on the action. (See Declaration of Scott Maurer, ¶¶ 7-11.) Additionally, the costs incurred by the Community Law Center to date are $350 (See Declaration of Scott Maurer, ¶ 11.)

As indicated above, a strong presumption exists that the amount of the lodestar, in this case $44,561.50, represents an adequate and appropriate fee award. (See Hensley, *supra*, at p. 533; Davis, *supra*, at p., 1544.) Based on the above, plaintiff requests that the Court approve the award of attorney's fees and costs to Plaintiff as reasonable.

## IV.   CONCLUSION

The settlement provides the class members with a total of $591,571.66: $91,000 more than the maximum recovery possible at trial under prevailing case law. The settlement involves a modest incentive award and a modest fee award based upon actual time expended; indeed, the fees and incentive award combined are less than ten percent of the total recovery.

For all of the foregoing reasons, the plaintiff requests that this Court issue an Order and Judgment granting final approval of the class action settlement. Consistent with an agreement of the parties, the parties ask that the court award plaintiffs reasonable attorneys fees and costs in the amount of $44,561.50.

LAW OFFICES OF WILLIAM E. KENNEDY

KATHARINE & GEORGE ALEXANDER
COMMUNITY LAW CENTER

_____
Scott Maurer
Attorney for Plaintiff Eliseo Navarrette and the
Settlement Class